IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 5:09-cr-35 (HL) |
| | : | |
| GROVER BELL, | : | |
| | : | |
| Defendant. | : | |

# ORDER

Defendant Grover Bell ("Bell") has been charged with possession of marijuana and possession of a firearm by a convicted felon. These charges arise from a traffic stop on March 8, 2009. During that stop, Macon Police Department officers discovered marijuana and a gun in Bell's vehicle. Bell has filed a Motion to Suppress the gun and marijuana (Doc. 23). A hearing on the Motion was held on November 9, 2009. After hearing witness testimony and argument from both parties, the Court finds as follows:

**I.    FACTS**

On March 8, 2009, Officer Sean McCulley ("McCulley") was patrolling the East Macon area. Around 4:40 p.m., he saw a red Ford truck run the stop light at the intersection of Emery Highway and Coliseum Drive. McCulley initiated a traffic stop by activating his blue lights, and the driver pulled over. McCulley exited his patrol car and approached the driver's side window. There were two people in the truck, Bell, who was driving, and his passenger, Sherrie Griffin ("Griffin"). McCulley asked for identification, which both Bell and Griffin provided with no argument. McCulley then

explained that he pulled Bell over because he saw Bell run the stop light. Bell did not have any difficulty understanding McCulley's explanation.

McCulley then returned to his patrol car. He radioed the operating room at the precinct and had the vehicle's license plate and the occupants' names run through the National Crime Information Center database. McCulley was informed that Griffin had outstanding warrants against her, and after learning that information, McCulley called Officer Jason Kellum ("Kellum") for assistance. It is standard procedure to have at least two officers present to effect an arrest. At that time, McCulley did not suspect any other criminal activity on the part of either Bell or Griffin.

After Kellum arrived at the scene two or three minutes later, McCulley told him about the outstanding warrants against Griffin. Kellum then walked over to the vehicle to speak to Bell. Kellum explained to Bell that it was taking a bit longer than usual to get the information back from the license check. Kellum asked Bell to exit the vehicle because he smelled alcohol on Bell's breath. Bell's eyes were also red and bloodshot. Bell complied with the request. Kellum wanted to make sure that Bell was safe to drive. When Kellum asked how much Bell had had to drink, Bell admitted to drinking a "couple of beers and a shot of whiskey."

McCulley remained in his patrol car until the warrants against Griffin were confirmed. Once he received confirmation, he exited his vehicle, went to the passenger's side of Bell's vehicle, and the officers placed Griffin under arrest. She was placed in handcuffs and put in the back of McCulley's patrol car. Bell was not under

arrest or in handcuffs at this time. After Griffin was placed in the patrol car, McCulley remained in the car and began working on the paperwork associated with her arrest. McCulley did not intend to arrest Bell at that time.

Kellum subsequently advised McCulley that he smelled alcohol coming from Bell. Kellum returned to the vehicle to speak with Bell, and then retrieved his alcolyzer from his patrol car. Kellum administered at least one, possibly two, breath tests to Bell. McCulley remained in his patrol car while Bell took the test, but exited the vehicle to see what the results of the test were. Kellum informed McCulley that the result was a high positive, but was not above the legal limit. Bell did not appear to Kellum to be too drunk to drive.

Bell was standing behind his vehicle at this time. For safety reasons, Kellum asked Bell if he had anything on him that would pose a threat to the officers or to Bell, and asked for consent to conduct a pat down. According to the officers, Bell did not object. Kellum patted Bell down, but found nothing. Bell, however, disputes that a pat down occurred. Kellum then asked Bell if he had any drugs or weapons in his vehicle, again to ensure everyone's safety. Bell told the officers that an old gun that belonged to his father was behind the seat, but the gun did not work.

What happened at this point is in dispute. Kellum testified that he asked Bell for permission to enter the vehicle and retrieve the gun, and Bell told Kellum to go ahead. Bell testified that Kellum asked to search the vehicle, and when Bell questioned why a search was necessary, Kellum told him that he would just get a warrant to search the

vehicle. Bell then said "go ahead," by which he meant go ahead and get a warrant. According to Bell, Kellum took his statement to mean go ahead and search the truck. There is no dispute that Kellum went to the vehicle and found the gun behind the seat. He also discovered an open can of beer and a small bag of marijuana a few inches away from the gun, which was loaded. At no time during this exchange did either officer have his gun drawn, baton out, or handcuffs out. Only after the marijuana was discovered was Bell handcuffed and placed under arrest. Neither officer advised Bell that he did not have to consent to Kellum entering the vehicle.

Bell was placed in the back of McCulley's patrol car with Griffin. McCulley then ran a criminal history check on Bell, and was advised that Bell had a previous felony conviction. Both Bell and Griffin were then taken to the Bibb County Law Enforcement Center.

Bell has been arrested several times, including a number of DUI arrests. He dealt with police officers each time, and is familiar with what happens when a person is arrested.

## II.   ARGUMENT AND ANALYSIS

Bell argues in his Motion that he did not give valid consent to search, and the fact of whether he ever gave consent is disputed. According to Bell, if he did give consent, the consent was given only in acquiescence to a show of authority and in response to Kellum's statement that he could go get a warrant, making the consent involuntary.

Bell relies on United States v. Tovar-Rico, 61 F.3d 1529 (11th Cir. 1995), to support his position. In that case, the defendant was charged with conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute. She filed a motion to suppress evidence seized in a warrantless search of her apartment. The Eleventh Circuit affirmed the district court's ruling that the defendant did not voluntarily consent to the search.

The pertinent facts relating to the Tovar-Rico entry and search are that five police officers and DEA agents knocked at the defendant's door, announced their identity, and requested permission to enter. Id. at 1535. The defendant opened the door and the officers entered quickly with guns drawn to do a protective sweep. After the sweep was done, an agent asked the defendant for permission to again search the entire apartment. Id. The agent told the defendant that she did not have to permit the search, but if she did not, the agents would come back with a search warrant. Id. at 1536. The defendant told the agents that she had just recently arrived and that she did not know what was going on, but agreed to the search. The Eleventh Circuit agreed with the district court's determination that the consent was involuntary because the defendant had already observed the officers explore every room and could not have reasonably known that she could still refuse a search. The Eleventh Circuit stated that it "entertain[ed] no doubt that [the defendant] opened the door in response to a 'show of official authority' and cannot be deemed to have consented to the agents' entry or to have voluntarily consented to the search." Id.

An officer conducting a routine traffic stop may request consent to search the vehicle. United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). "A consensual search is constitutional if it is voluntary; if it is the product of an 'essentially free and unconstrained choice.' In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances." Id. (citations omitted). An evaluation of the totality of the circumstances involves the review of several factors, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found. Id.

The Government argues that there is no evidence of any coercive police procedure in this case. Kellum merely requested permission to recover the gun from the truck after Bell volunteered the information that there was a gun in the truck. Bell was not under arrest or in handcuffs, and the officer never drew his weapon. The Government further argues that the evidence shows that Bell was cooperating with the officers, that he had a reasonable amount of intelligence, and that he believed no incriminating evidence would be recovered. While the Government acknowledges that Bell was not advised of his right to refuse to consent to search, it argues that it is not required to show that Bell was aware of this right in order to establish a voluntary consent. *See* United States v. Zapata, 180 F.3d 1237, 1241-42 (11th Cir. 1999).

Based on the testimony presented, the Court finds that consent was given by Bell for Kellum to retrieve the gun from the vehicle. It does not appear to the Court that Kellum conducted a search for Fourth Amendment purposes, but instead the evidence shows that when Kellum was retrieving the gun with Bell's consent, Kellum discovered marijuana within inches of the gun.

Further, even taking Bell's version of the facts as true, it does not appear that the coercive police conduct in Tovar-Rico is present in this case. Rather than look at the totality of the circumstances, Bell focuses only on the allegation that Kellum said he would get a warrant if Bell refused to consent to the search. The Eleventh Circuit did not find the consent in Tovar-Rico to be involuntary just because of the threat to secure a warrant. Further, the Eleventh Circuit has found voluntariness under far more coercive conditions than those present in Bell's case. For instance, in United States v. Garcia, 890 F.2d 355, 360-361 (11th Cir. 1989), the defendant's consent was deemed voluntary even though he consented: (1) after fourteen officers arrested him; (2) the officers engaged in a protective sweep of his home with their guns drawn; and (3) the officers refused the defendant's consent to only a limited search and told him that they would have to secure the house and apply for a warrant if he did not give consent to a full search. Similarly, in United States v. Long, 866 F.2d 402, 404-05 (11th Cir. 1989), the defendant's consent was deemed voluntary even though the defendant only consented after officers told him that if he refused they would return with a warrant and "dig the place up."

**III.     CONCLUSION**

For the reasons set forth herein, Defendant's Motion to Suppress (Doc. 23) is denied.

This the 12th day of November, 2009.

*s/  Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh